Wayne **TRAYWICKS**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–429.

Court of Criminal Appeals of Oklahoma.

Oct. 28, 1976.

Archibald Hill by Don Anderson, Public Defender, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Wayne Traywicks, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, Case No. CRF-74-2452, with the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1973, § 701.2. His punishment was fixed at an indeterminate term of ten (10) years to Life imprisonment in the State penitentiary, in accordance with 21 O.S.Supp.1973, § 701.4. From said judgment and sentence a timely appeal has been perfected to this Court.

Joe P. Watson was called as the State's first witness, and related that on July 22, 1974, he resided with the decedent Phillip Alford and Carolyn Marzett at 804 N.E. 24th Street in Oklahoma City, Oklahoma. He related his knowledge of a telephone conversation between the defendant and the deceased at approximately midnight that night, then being awakened at approximately 3:00 a.m. by gunshots. As he was investigating the noise, he met the defendant, who held a pistol to the witness' head and told him " . . . he said was going to spare my life if I didn't tell it." (Tr. 13) The witness stated that the defendant then left and the witness directed Ms. Marzett to call the police; after which he found the decedent lying in a neighbor's yard with a head wound. He also related a brief exchange between the defendant and Ms. Marzett in which the defendant stated, in response to an inquiry by Ms. Marzett as to the fate of the deceased, "he said, 'I killed him.'" (Tr. 35)

The State next called Carolyn Marzett, who was present at 804 N.E. 24th Street during the incident on July 22, 1974. She related being awakened by a knock on the door during the early morning hours, hearing a shot immediately after the door was opened, and hearing the decedent say "Oh, Wayne." (Tr. 40) Upon going to a window she saw the defendant running toward the front door, after which she related substantially the same testimony as did Mr. Watson. She identified State's Exhibits Nos. 1, 2 and 3 as portraying the scene of the homicide. Defendant objected to the introduction of the exhibits and State's Exhibits Nos. 2 and 3 were refused admittance. Counsel for defendant also objected to the manner in which the photos were held by the prosecutor, alleging they were in view of the jury. Cross-examination brought out the fact that this witness was aware of defendant's previously friendly relationship with the deceased.

The State's third witness, Earl Tucker, was the neighbor of Carolyn Marzett. He testified that he heard several shots at approximately 3:00 a. m. the morning of the 22nd of July, and then found deceased lying in his yard.

Mr. Tucker's wife, Gloria Tucker, was called and related hearing shots and a person screaming, saying "No, no, no, no." (Tr. 68) She testified that she observed someone run from the house next door, but could not identify that person.

Oklahoma City Police Officer Gary James was called by the State, and testified that he was the photographer who took several photographs of the scene offered into evidence. They included photos of the living room, a blood spattered couch, and the general area.

The State's sixth witness was Oklahoma City Police Officer Robert Thompson. He testified that he had a conversation with the defendant on July 23, 1974, at Mercy Hospital. The defendant stated that the shooting was accidental and related having little recollection of the precise chain of events. He did remember disposing of the

gun, and changing a pair of shoes which had blood on them.

The State's final witness was Samuel Littlejohn, who was employed at the same location as the defendant. After being qualified as a hostile witness he stated that he saw defendant with a pistol and that he loaned defendant his automobile in order to sell the pistol that evening.

The State terminated its evidence by submitting a stipulation as to the medical examiner's findings: one gunshot wound in the arm, and three gunshot wounds to the head of the decedent, with death resulting thereby.

The defendant testified in his own behalf that he went to see the deceased for the purpose of selling him a handgun, and when deceased opened the door the gun discharged. Defendant could not then remember shooting again. He did remember disposing of the weapon and changing his shoes. He related an eight year history of blackout spells, during which he sometimes lost consciousness.

Dr. James Cox testified for the defendant as a psychiatrist from whom the defendant was currently seeking care. His tests had indicated no physical reason for the defendant's spells, but his opinion indicated it was possible for them to occur without any physical basis, and that defendant had a blackout spell on July 22, 1974.

Both sides then rested.

■ Defendant's first assignment of error involves offering into evidence prejudicial photographs in such a way that they were visible to the jury, even though the defendant's objection to the photographs was sustained. Upon making this assertion, counsel for defendant then slips into an ill conceived discussion concerning the propriety of admitting the photographs and deals no further with the issue of the premature display. However, disregarding defendant's summary treatment in this regard, after making an intensive examination of the circumstances reflected in the

record, we hold this contention to be without merit.

In response to defendant's motion for mistrial due to the allegedly prejudicial display, the trial court responded:

"The pictures have not been admitted in evidence. And I doubt if the jury could see the pictures as they were handed to the witness. Motion for mistrial overruled." (Tr. 46).

While the statement of the trial court may have lacked a concrete black letter decision as to whether or not the photographs were seen by the jury, his ruling leaves little to the imagination. We would emphasize here our belief that the trial court is in many areas of the criminal justice system necessarily vested with the power to make many discretionary rulings. In the absence of a showing of abuse of that discretion, the trial court's ruling will not be disturbed. Suffice it to say we find no evidence of an unreasonable, unconscionable, and arbitrary action taken without proper consideration of the facts relating thereto.

■ Defendant's second and fourth assignments of error will be considered as one, given the degree of similarity therein. Defendant assigns error due to failure to grant mistrial motions made during the course of the trial in response to allegedly improper conduct by the prosecuting attorney. During cross-examination of the defendant, the District Attorney attempted to establish the difference in force required to fire a double action revolver from the uncocked position as opposed to the cocked position; consequently, he was making a detailed outline of the circumstances relating thereto. The trial court ruled this was permissible and we are constrained to agree. The defendant had testified on direct examination in regard to his "accidental" theory of defense that the gun was uncocked; ruling this to be a relevant line of inquiry was not an abuse of discretion.

■ With regard to allegedly improper remarks made during closing arguments, we would refer to the often stated Okla-

homa rule as found in *Battle v. State,* Okl. Cr., 478 P.2d 1005 (1970), quoting from the first paragraph of the Syllabus:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. . . . It is only when argument by counsel of the State is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument."

Accord, *Harvell v. State,* Okl.Cr., 395 P.2d 331 (1964).

Since counsel for defendant did not indicate with particularity exactly which comments were objectionable, we examined the entire record for improper comments possibly resulting in prejudice to the defendant, and we found none. Finding as we do, that the prosecuting attorney's comments were within the proper guidelines, we hold that defendant's second and fourth assignments of error are without merit.

■ Defendant's third assignment of error alleges the evidence presented at trial was insufficient to support the conviction for murder in the second degree. This is an assignment with which we often deal, and we will recite the rule which is extensively followed in Oklahoma found in *Pershica v. State,* Okl.Cr., 525 P.2d 1374 (1974):

". . . This Court has consistently held that where there is competent evidence in the record from which the trier of the facts could reasonably conclude that defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the trier of the facts to weigh the evidence and determine the facts. . . . (Citations omitted) 525 P.2d at 1377

We must conclude from our reading of the record before us the sufficiency of competent evidence from which the jury could conclude that defendant was guilty of murder in the second degree. This assignment of error is therefore without merit.

For the above and foregoing reasons, it is the opinion of this Court that the judgment and sentence appealed from should be, and the same is, hereby, *AFFIRMED.*

BUSSEY and BLISS, JJ., concur.